IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENT IAN RUDACILLE, | : | |
| | : | |
| Plaintiff, | : | CIVIL NO. 4:08-CV-1718 |
| | : | |
| v. | : | (Judge Jones) |
| | : | |
| DOUG HOKE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

February 24, 2009

This matter is before the Court for screening of Plaintiff Brent Ian Rudacille ("Plaintiff" or "Rudacille")'s Amended Complaint (Doc. 15.) For the reasons set forth below, the Amended Complaint will be dismissed.

**I.   BACKGROUND**

Rudacille was an inmate at the York County Prison ("YCP") in York, Pennsylvania at the time he commenced this *pro se* action pursuant to the provisions of 42 U.S.C. § 1983. His Complaint (Doc. 1) alleged that, while he was in punitive segregation at the YCP, he was denied access to an adequate law library in violation of his First Amendment right of access to the courts. He also filed a Motion to

1

proceed *in forma pauperis* (Doc. 6), a Motion to Appoint Counsel (Doc. 3), and a Motion to Disqualify Opposing Counsel (Doc. 9).

By Memorandum and Order dated October 31, 2008, this Court granted Rudacille's Motion to proceed *in forma pauperis*, denied his Motions to Appoint Counsel and to Disqualify Opposing Counsel, and dismissed his Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). (Doc. 12.) However, in the interests of justice to Rudacille as a *pro se* litigant, he was given twenty (20) days to submit an amended complaint. On November 28, 2008, an Amended Complaint (Doc. 15), dated November 14, 2008, was filed. The Amended Complaint now is before the Court for screening under 28 U.S.C. § 1915.

## II. DISCUSSION

### A. Allegations of the Amended Complaint

In his Amended Complaint, Rudacille alleges that he was denied access to the courts to file claims stemming from incidents that occurred at the YCP on November 12 and 16, 2007.[1] Rudacille alleges that, on November 12, 2007, while he was an

---

[1] Rudacille names the following Defendants in his Amended Complaint: Doug Hoke, York County Commissioner; Stanley H. Rebert, York County District Attorney; Richard Keuerleber, York County Sheriff; The Honorable Michael J. Brillhart, Member of the York County Court of Common Pleas; Robb Green, York County Controller; Christopher B. Reilly, York County Commissioner; Steve Chronister; York County Commisioner; Mary Sabol, YCP Warden; Thomas Hogan, former

(continued...)

inmate in the Echo-A pod, a punitive segregation unit, a corrections officer observed him and his cellmate using a fishing line to send a bottle of shampoo to an inmate in a neighboring cell. (Doc. 15 at ¶¶ 19-20.) Rudacille admits that the fishing line is contraband. (*Id.* at ¶ 20.) Rudacille also admits that, after the corrections officer saw the fishing line, he and his cellmate flushed it down the toilet. (*Id.*)

When he was confronted by corrections officers, including officers Morgan, Russel, and Manny Salcedo, about the location of the fishing line, he responded that he had flushed it down the toilet. (*Id.* at ¶ 21.) The officers then handcuffed Rudacille and his cell mate and instructed them to have a seat in the dayroom. (*Id.*) They complied with the orders. (*Id.*)

While Rudacille and his cellmate were in the dayroom, Officers Morgan, Salcedo, and Russel searched their cell and confiscated two of their four rolls of toilet paper, mail that Rudacille received for his birthday, and Rudacille's medically prescribed "2.0 shake." (*Id.* at ¶ 22.) Rudacille asked for the return of the confiscated items based upon his belief that they were not contraband. (*Id.* at ¶ 23.) Rudacille was informed that he was not permitted to receive mail while he was in punitive

---

[1](...continued)
YCP Warden; John Steiner; YCP Deputy Warden; Roger Thomas, former YCP Deputy Warden; Dennis Bowen, YCP Deputy Warden; Beaita Ernie, YCP Complaint Supervisor; Scott Koons, YCP Counselor; and Donald L. Reihart, York County Assistant Solicitor.

segregation, that only two rolls of toilet paper are permitted in each cell, and that he is not allowed to have a 2.0 shake. (*Id.* at ¶ 24.) Rudacille's response that mail is permitted, each inmate is permitted to have two rolls of toilet paper, and his shake is part of his special medical diet was rejected. (*Id.* at ¶¶ 24-25.) Rudacille then was advised that he would be written up for failing to wear his wristband. (*Id.* at ¶ 25.)

After Rudacille returned to his cell, he was not permitted to speak to the captain despite his requests. (*Id.* at ¶ 27.) When Rudacille asked Officer Morgan for a captain during the evening medication round, Morgan informed him that he would be written up for interfering with medication. (*Id.* at ¶ 28.) Morgan then suggested that "we should just leave and not give anyone their meds." (*Id.*) Upon hearing Morgan's comment, the other inmates became agitated and made noise, and the nurse left the pod without administering medications. (*Id.*)

On the evening of November 12, 2007, Rudacille received two write-ups for not wearing his wristband at the time of the search of his cell and for causing a disturbance and interfering with medication by requesting a captain. (*Id.* at ¶ 29.) Rudacille filed a grievance "on this entire chain of events." (*Id.*)

When Rudacille went to his disciplinary hearing, he was told that "it doesn't matter if you plead guilty or not, because your [sic] being found guilty either way."

4

(*Id.* at ¶ 30.) Rudacille chose to plead guilty because he would "receive less time" if he agreed and he already knew he was being found guilty. (*Id.*)

On November 16, 2007, Rudacille and his cellmate ran out of toilet paper because of the fact that two rolls of toilet paper had been cofiscated from their cells on November 12. (*Id.* at ¶ 31.) When Rudacille asked Officer Salcedo for a roll of toilet paper, he responded that he would not give him any because the toilet paper had been taken by another officer. (*Id.*) When Rudacille explained that he and his cell mate had no toilet paper, Salcedo responded "I guess your shit outta luck" and called his partner, Greg Clark, to come join in his laugh. (*Id.*) The officers failed to give the inmates toilet paper. (*Id.*)

When the next shift arrived, both Rudacille and his cellmate tried to get toilet paper from corrections officers without success. (*Id.* at ¶ 32.) Rudacille had to use his only white t-shirt to make toilet paper for he and his cellmate. (*Id.*) Both he and his cellmate filed "multiple grievances" about this incident. (*Id.* at ¶ 33.) Rudacille filed grievances on November 12, 19, and 22, 2007. (*Id.*) He also wanted to file a lawsuit against the prison for cruel and unusual punishment, and his cellmate agreed to testify later if necessary. (*Id.*)

Rudacille received a response from his first grievance, and Officer Morgan was instructed to return to Rudacille the mail that had been confiscated from his cell on November 12, 2007. (*Id.* at ¶ 34.) Rudacille immediately appealed arguing that none of the items should have been confiscated. (*Id.*)

On December 12, 2007, Rudacille was released from punitive segregation after spending 45 days there. (*Id.* at ¶ 35.) He immediately began researching his claim, but had difficulty performing legal research because he had no experience. (*Id.*) In February 2008, he came across a prisoners' rights book stating that prisons are required to provide toilet paper and citing cases similar to his. (*Id.* at ¶ 36.) Rudacille started to create section 1983 forms, and his complaint was pieced together and almost ready to be submitted when he returned to punitive segregation. (*Id.*)

Rudacille was sentenced to 90 days in punitive segregation and lost his remaining 66 days of earned time. (*Id.* at ¶ 37.) He arrived on March 5, 2008 and expected to be released on June 3, 2008. (*Id.*) While he was in punitive segregation, he tried to obtain the forms he needed to start his section 1983 action, forms to file a habeas petition, the address to the courthouse, and research material, but was prevented from doing so by the current policy. (*Id.* at ¶ 38.) The current policy instructs segregated inmates to write a request slip to their counselor, Scott Koons,

specifying the exact book they want to use. (*Id.*) The inmates then may use the book for 24 hours. (*Id.* at ¶ 38.) However, Rudacille was unable to be precise in his requests because of his lack of legal knowledge. (*Id.* at ¶ 38.) He was only permitted one book at a time, and it would take anywhere from three days to two weeks to receive a book. (*Id.*) Because he only had one book at a time, he could not fully understand what he was reading. (*Id.*) He alleges that this policy completely blocked him from being able to file his claim about his toilet paper being taken from him and his habeas petition challenging his loss of days of earned time. (*Id.*)

No type of legal assistance is permitted for YCP inmates, and the inmate law library workers do not have any training. (*Id.* at ¶ 39.) Rudacille wanted to challenge the loss of his days of earned time by filing a habeas petition on the grounds that he was not provided with assistance in preparing for his hearing, and the disciplinary hearing board did not consist of a fair and impartial decision maker. (*Id.* at ¶ 40.) However, he could not file his habeas petition because he could not obtain the research material he needed by "exact-cite." (*Id.*) Further, Rudacille claims that habeas relief is no longer available to him because he has less than 45 days left until his release from YCP and therefore could not be awarded all of the 99 days of earned time he lost. (*Id.* ¶ 41.)

Rudacille claims he was unable to learn the pleading requirements to file a section 1983 civil rights lawsuit and was unaware of the Prison Litigation Reform Act ("PLRA") requirement of exhausting administrative remedies before filing suit. (*Id.* at ¶ 42.) He claims that the policy regarding access to the law library for inmates in punitive segregation caused him harm because he was unable to learn about the PLRA and never exhausted administrative remedies on the claim. (*Id.*) Because he failed to timely exhaust his claims, Defendant Beaita Ernie, YCP Complaint Supervisor, informed him that too much time had elapsed, and his grievance was denied. (*Id.*) As a result, Rudacille was unable to pursue his initial lawsuit. (*Id.*)

Rudacille did not have access to the law library until June 9, 2008 after not being permitted access for 97 days. (*Id.* at ¶ 44.) After returning to the law library, Rudacille discovered that his previous work had been deleted from the computer. (*Id.*) Therefore, he began the entire process again, but again was placed in punitive segregation between July 16 and July 22, 2008. (*Id.*) After he was released from punitive segregation on July 22, Rudacille started to write to "anyone and everyone" who could make or suggest a change in the policy to give segregated inmates better access to legal material. (*Id.* at ¶ 45.) He did not receive any response to his letters. (*Id.*)

Rudacille presented the facts relating to this case in a grievance and received a response from Defendant Ernie on March 17, 2008 that "did not provide any type of relief". (*Id.* at ¶ 46.) He immediately appealed to Defendant Thomas, Deputy Warden of Treatment, and received a response from Thomas on March 26, 2008. (*Id.* at at ¶ 47.) He then appealed to Defendant Steiner, Deputy Warden of Training, and received a response on April 16, 2008 that failed to provide relief. (*Id.* at ¶ 48.)

On April 16, 2008, Rudacille filed an appeal to Defendant Reihart, Assistant Solicitor, and on May 2, 2008, he received a response that denied him relief. (*Id.* at ¶ 49.) Rudacille then appealed to Defendant Hoke, Commissioner, and received a response from Reihart dated June 12, 2008 requesting additional information. (*Id.* at ¶ 50.) On June 24, 2008, Rudacille responded to the request for additional information. (*Id.* at ¶ 51.) On July 8, 2008, he responded again by correcting a mistake and providing additional information. (*Id.*) He received a response dated July 22, 2008 denying relief. (*Id.* at ¶ 51.)

On July 24, 2008, Rudacille filed an appeal for a second time to Hoke. (*Id.* at ¶ 52.) When he did not receive a response, he sent the same appeal to Hoke again via certified mail on September 11, 2008. (*Id.* at ¶ 53.) He still had not received a response to this appeal. (*Id.*)

9

Rudacille has informed all of the YCP Board members via letter of the inadequacies of the current YCP policy regarding access to legal materials by inmates in punitive segregation. (*Id.* at ¶ 54; Ex. B.) None of the YCP Board members responded to the letter. (*Id.* at ¶ 54.)

Rudacille claims that he has been denied access to the courts because he was unable to file a habeas petition challenging the confiscation of his earned time and a section 1983 civil rights lawsuit challenging the conditions of his confinement. (*Id.* at ¶ 57.) He alleges that habeas relief is no longer available to him because he only has about 40 days left in jail and therefore cannot recover his 99 lost days of earned time credit. (*Id.* at ¶ 58.)

**B.   Standard of Review**

Title 28 U.S.C. § 1915(e)(2)(B) states that, where a plaintiff is granted permission to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." In determining whether a complaint fails to state a claim for purposes of § 1915(e)(2)(B)(ii), a court applies the same standard as that used when considering a motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(6). *See Shane v. Fauver*, 213 F.3d 113, 117 (3d Cir. 2000); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). "However, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." *Evancho v. Fischer*, 423 F.3d 347, 351 (3d Cir. 2005) (citations omitted).

### C. Screening of Rudacille's Claims

Rudacille's original Complaint was dismissed as a result of his failure to allege facts sufficient to state a right of access to the courts claim. (*See* Doc. 12.) In its Memorandum, this Court instructed Rudacille that the right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 546 U.S. 403, 415 (2002). We then explained that Rudacille's Complaint (Doc. 1) was deficient because he failed to state how the alleged limitations on his access to the law library prevented

11

him from filing suit, he failed to describe his two potential underlying suits with enough specificity for us to determine whether they are non-frivolous, and he failed to identify a remedy that may be awarded to compensate him for relief that would not be available in a future action. (*See* Doc. 12 at 5.)

In his Amended Complaint, Rudacille again has failed to state a denial of access to the courts claim. He has failed to identify a non-frivolous underlying claim, and thus he has not alleged an "actual injury" to his litigation efforts. *See Christopher*, 536 U.S. at 415. Rudacille identifies two underlying claims that he was unable to pursue because of his limited access to the law library during his time in punitive segregation. First, he alleges that he was unable to file a section 1983 civil rights lawsuit raising a claim of cruel and unusual punishment based on the refusal of corrections officers to provide him with toilet paper on November 16, 2007. (*See* Doc. 15 at ¶¶ 33, 36.) Second, he alleges that he was unable to file a petition for writ of habeas corpus challenging his loss of 99 days of earned time. (*See id.* at ¶ 40.)

With respect to Rudacille's cruel and unusual punishment claim, "to establish an Eighth Amendment violation an inmate must allege both an objective element – that the deprivation was sufficiently serious – and a subjective element – that a prison official acted with a sufficiently culpable state of mind, *i.e.*, deliberate indifference."

*Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996) (citing *Wilson v. Seiter*, 501 U.S. 294 (1991)). "The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.'" *Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir. 2000) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). To satisfy the subjective component, an inmate must prove that a prison official demonstrated "deliberate indifference" to a serious risk of harm to which the inmate was exposed. *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Rudacille has not established that the refusal by corrections officers to give him toilet paper on November 16, 2007 posed a substantial risk of serious harm to him. He does not allege that he was deprived of toilet paper any longer than one day. In *Schaeffer v. Schamp*, 2008 WL 2553474, at *6 (W.D. Pa. June 25, 2008), the Court concluded that the plaintiff failed to state a claim of cruel and unusual punishment where he alleged that, for a period of 10 days, he was deprived of toilet paper, as well

as a mattress, soap, running water, legal supplies, and his prescription medication, and he only received one meal a day. *See also Williams v. Campbell*, 2008 WL 2816089, at *7 (E.D. Pa. July 18, 2008) (stating "the denial of toilet paper for a limited number of days is not sufficient to state a constitutional violation" and collecting cases). Rudacille's allegation that he was deprived of toilet paper for one day does not constitute a claim of cruel and unusual punishment.

Rudacille also fails to demonstrate that he had a non-frivolous underlying claim with respect to his allegation that the restrictions on his access to the law library prevented him from filing a habeas petition challenging his loss of earned time. Rudacille alleges that the bases for his claim are that he was not provided with assistance to prepare for his hearing and that the disciplinary hearing board did not consist of a fair and impartial decision maker. (*See* Doc. 15 at ¶ 40.) As an initial matter, Rudacille fails to clearly allege the factual basis for any habeas claim. He merely states that he went to a disciplinary hearing where he pled guilty to infractions and then complains that he had no legal assistance and that the hearing was unfair. It is not even clear to which hearing Rudacille refers because he does not describe the circumstances pursuant to which he lost earned time. Further, any habeas claim based on loss of earned time credit is moot because Rudacille has already been released

from YCP (*see* Doc. 18), and thus his claim is not redressable by a favorable judicial decision. *Scott v. Holt*, 297 Fed. Appx. 154, 156 (3d Cir. 2008). Even if his claim were not moot, Rudacille has failed to set forth any allegations that demonstrate the claim is non-frivolous. As to his allegation of a lack of assistance in preparing for his disciplinary hearing, inmates have no right to legal counsel or assistance in such circumstances. *See Wolff v. McDonnell*, 418 U.S. 539, 570 (1974). As to Rudacille's allegation that the hearing lacked a fair and impartial decisionmaker, "the requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge." *Speight v. Minor*, 245 Fed. Appx. 213, 217 (3d Cir. 2007) (quoting *Meyers v. Alldredge*, 492 F.2d 296, 306 (3d Cir. 1974); citing *Rhodes v. Robinson*, 612 F.2d 766, 773 (3d Cir. 1979)). Rudacille makes no allegation that any member of the disciplinary hearing board was involved in any manner with his underlying charges, and therefore, he has failed to sufficiently allege a non-frivolous habeas claim affected by his purported lack of access to the courts.

## III. CONCLUSION

Rudacille has failed to demonstrate that he had any nonfrivolous, underlying claims that were compromised by the alleged limited access he had to the law library while he was in punitive segregation. Thus, he has failed to state an access to the courts claim. Because he already was given leave to amend his Complaint to state a claim and still has failed to do so, his Amended Complaint will be dismissed with prejudice. An appropriate order will enter.